# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| GINNINE FRIED, on behalf of herself and all others similarly situated, | Case No.: 2:15-cv-02512-MCA-MAH<br>Hon. Madeline Cox Arleo |
| Plaintiff, | Motion Day: September 21, 2015 |
| v. | |
| JPMORGAN CHASE & CO., and JPMORGAN CHASE BANK, N.A. d/b/a Chase, | ORAL ARGUMENT REQUESTED |
| Defendants. | |

# DEFENDANTS' REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS

Robert D. Wick
Christian J. Pistilli
Kathryn Cahoy
COVINGTON & BURLING LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000

Anthony Del Guercio
PARKER IBRAHIM & BERG LLC
270 Davidson Avenue
Somerset, NJ 08873
(908) 725-9700

*Attorneys for Defendants*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ......................................................................................................................... 2

I.     CHASE PROPERLY CALCULATED PLAINTIFF'S TERMINATION DATE. ............ 2

II.    PLAINTIFF'S HPA CLAIM IS TIME-BARRED. ............................................................ 7

III.   PLAINTIFF'S STATE-LAW CLAIMS SHOULD BE DISMISSED. .............................. 9

      A.    Plaintiff's NJCFA Claim Is Preempted and Abandoned. ....................................... 9

      B.    Plaintiff's Contract and Warranty Claims Are Preempted. ................................. 10

      C.    Plaintiff's Unjust Enrichment Claim Is Preempted. ............................................. 11

CONCLUSION ................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Tobacco Co. v. Patterson*,
   456 U.S. 63 (1982) ............................................................................................................. 4, 6

*Anderson v. DSM N.V.*,
   589 F. Supp. 2d 528 (D.N.J. 2008) ........................................................................................ 7

*Barzelis v. Flagstar Bank, F.S.B.*,
   784 F.3d 971 (5th Cir. 2015) ............................................................................................... 11

*Dwoskin v. Bank of Am., N.A.*,
   850 F. Supp. 2d 557 (D. Md. 2012) ..................................................................................... 10

*Fellows v. CitiMortgage, Inc.*,
   710 F. Supp. 2d 385 (S.D.N.Y. 2010) ............................................................................ 10, 11

*Johnson v. Novastar Mortg., Inc.*,
   698 F. Supp. 2d 463 (D.N.J. 2010) ...................................................................................... 10

*King v. Burwell*,
   135 S. Ct. 2480 (2015) ........................................................................................................... 4

*Merck & Co. v. Reynolds*,
   559 U.S. 633 (2010) ............................................................................................................... 8

*Miller v. Fortis Benefits Ins. Co.*,
   475 F.3d 516 (3d Cir. 2007) ................................................................................................... 8

*Morales v. Trans World Airlines, Inc.*,
   504 U.S. 374 (1992) ............................................................................................................... 9

*Pa. ex rel. Zimmerman v. PepsiCo, Inc.*,
   836 F.2d 173 (3d Cir. 1988) ................................................................................................... 7

*Register v. PNC Fin. Servs. Grp., Inc.*,
   477 F.3d 56 (3d Cir. 2007) ..................................................................................................... 6

*Scott v. GMAC Mortg., LLC*,
   2010 WL 3340518 (W.D. Va. Aug. 25, 2010) .................................................................... 10

*Tinley v. Gannett Co.*,
   55 F. App'x 74 (3d Cir. 2003) ............................................................................................... 8


*Town of Babylon v. Fed. Hous. Fin. Agency*,
    699 F.3d 221 (2d Cir. 2012)......................................................................................5

**Statutes**

12 U.S.C. § 4902................................................................................................1, 3, 6, 9

12 U.S.C. § 4903...........................................................................................................9

12 U.S.C. § 4904......................................................................................................7, 9

12 U.S.C. § 4907...........................................................................................................7

12 U.S.C. § 4908...........................................................................................................9

N.J.S.A. § 56:12-15.....................................................................................................11

**Other Authorities**

Fannie Mae Servicing Guide Announcement SVC-2010-05 (Mar. 30, 2010) ..............5

Making Home Affordable Program, *Handbook for Servicers of Non-GSE Mortgages* (Version 3.0) (Dec. 2, 2010) ....................................................................6

**PRELIMINARY STATEMENT**

Chase's opening brief demonstrated that the statutory text, the statutory purpose, industry practice, and common sense all support its straightforward interpretation of the HPA. Plaintiff's opposition concedes several key points that confirm the correctness of Chase's interpretation.

*First*, Plaintiff does not dispute that an updated property value was a necessary "condition" of her loan modification, *i.e.*, that the modification could not have occurred without an updated valuation of the mortgaged property. Under the HPA, the PMI termination date for a modified loan must be "recalculated" based on the "modified terms *and conditions*" of the loan. 12 U.S.C. § 4902(d) (emphasis added). Accordingly, the statutory text required Chase to use the updated value of Plaintiff's property in recalculating her PMI termination date.

*Second*, Plaintiff's competing interpretation of the statute makes no economic sense. According to Plaintiff, Chase should have recalculated her PMI termination date using a hybrid mixture of (1) the amortization schedule generated by her *modified* loan, and (2) the value of her property at the time of her *original* loan. Plaintiff nowhere explains why it makes sense to use an outdated property value in "recalculating" the PMI termination date for her modified loan, especially when the modification itself – which she actively sought and agreed to – was conditioned on an updated property value.

*Third*, Plaintiff does not deny that Chase's interpretation of the HPA is more consistent with the statutory purpose. Instead, Plaintiff concedes that the statute was intended (i) to allow PMI to continue until the date that a borrower attains an approximately 20% equity stake in the mortgaged property, and (ii) to require termination of PMI upon attainment of that equity level. Opp. at 7-8. She nevertheless interprets the statute in a manner that conflicts with these congressional objectives: in cases in which property values have *fallen* by the time of a loan modification, Plaintiff's interpretation would force lenders to terminate PMI before borrowers

have attained a 20% equity level, and in cases in which property values have *risen* by the time of a modification, borrowers would be forced to continue paying for PMI long after they reached that level of equity.

*Finally*, it is undisputed that Plaintiff's construction of the HPA would reverse Fannie Mae and the industry's longstanding reading of the statute. As a result, Plaintiff's interpretation would needlessly upset the expectations of the entire mortgage industry.

Rather than coming to grips with the troubling implications of her interpretation of the HPA, Plaintiff argues that the statutory text unambiguously mandates these unreasonable results. Opp. at 8-10. Plaintiff is mistaken: the far more natural reading of the statute is that the "recalculation" required by the HPA in the event of a loan modification takes account of updated property valuations that are required as a condition of the modification. If not for the updated property valuation, there would be no modification, and the modification in turn triggers a statutory requirement to recalculate the operative PMI termination date. Furthermore, even if the statutory text were deemed ambiguous, settled rules of statutory construction would require that the ambiguity be resolved in a manner that avoids the unreasonable results produced by Plaintiff's interpretation.

Plaintiff's HPA claim therefore fails to state a claim for relief. Alternatively, the Court should dismiss the HPA claim as time-barred. *See* Mem. at 20-21. Plaintiff's state-law claims are preempted by the HPA and fail to state a claim for relief. *Id.* at 21-28. Finally, the Court should dismiss all claims against Chase's parent company, JPMC. *Id.* at 29-30.

## ARGUMENT

### I.     CHASE PROPERLY CALCULATED PLAINTIFF'S TERMINATION DATE.

The plain text of the HPA required Chase to use the updated value of Plaintiff's property in calculating the PMI termination date for her modified loan. Mem. at 14-16. When a loan is

2

modified, the HPA requires the lender or servicer to calculate a new termination date that reflects the "modified terms and conditions" of the loan. 12 U.S.C. § 4902(d). Here, one of the mandatory "conditions" of Plaintiff's loan modification was an updated valuation of her property. Mem. at 8-9. Chase was therefore required to use this updated property value – along with the updated interest rate and payment schedule – in calculating the PMI termination date for Plaintiff's modified loan. *Id.* at 14-16.

Without ever addressing this reading of the statute, Plaintiff insists that Chase should have ignored the value of her property at the time of her loan modification because the modification did not alter the "original value" of her property. Opp. at 8-10 (citing 12 U.S.C. § 4901(12)). Under the HPA, however, the "original value" of Plaintiff's property no longer governs when a loan is modified. Rather, the original value of the property – along with the original interest rate and amortization schedule – are superseded and replaced by the "terms and conditions" of the modified loan for purposes of recalculating the borrower's PMI termination date. *See* 12 U.S.C. § 4902(d).

Plaintiff's opposition never addresses this straightforward interpretation of the HPA. Instead, it reflexively insists that the statutory text "unambiguously" required Chase to calculate her PMI termination date using an *updated* interest rate and amortization table but an *outdated* property value. Opp. at 9-10. Plaintiff offers no viable rationale for why certain aspects of her modification should be taken into account for the HPA's mandatory recalculation while other aspects are ignored. At the very least, moreover, the competing reading of the statute set forth above shows that the statutory text does not unambiguously favor *Plaintiff*. And any alleged ambiguity in the HPA should be resolved in Chase's favor for several reasons.

*First*, Chase's interpretation is more consistent with the statutory purpose. As Plaintiff's

3

opposition acknowledges, the HPA was intended to require termination of PMI only after PMI becomes "unnecessary," *i.e.*, after borrowers accumulate sufficient equity in their homes to protect lenders from an undue risk of loss. Opp. at 7-8; *see* Mem. at 3-4. Under Plaintiff's interpretation of the HPA, however, lenders often would be forced to terminate PMI on modified loans even when PMI is still entirely "necessary," *i.e.*, when a fallen property value at the time of the modification leaves the lender exposed to a substantial risk of loss. Mem. at 17. Conversely, when property values have risen by the time of a modification, Plaintiff's interpretation would harm borrowers by prolonging PMI payments even though the lender no longer faces any such risk. *Id.* The Court should decline to interpret the HPA in a manner that would frustrate the intent of the statute. *See King v. Burwell*, 135 S. Ct. 2480, 2496 (2015) (adopting interpretation of the Affordable Care Act that was consistent with "Congress's plan" in enacting the statute).

*Second*, Plaintiff's interpretation fails under the settled principle that statutes should not be construed in a manner that leads to "unreasonable results." *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 71 (1982). Plaintiff admits that lenders must recalculate a borrower's PMI termination date using the updated interest rate, payment schedule, and amortization schedule of a modified loan. Opp. at 9. The only dispute is whether lenders are also permitted to use an updated property value in performing the statutorily-mandated recalculation. Plaintiff nowhere explains why Congress would have wanted lenders to use updated amortization and payment terms but an outdated property value in performing that calculation. Mem. at 17-18. Plaintiff's attempt to mix apples and oranges solely because it would work to her own economic advantage should be rejected.

*Third*, adopting Plaintiff's interpretation of the HPA would create tremendous upheaval in the mortgage industry. Plaintiff does not dispute that Fannie Mae, a quasi-governmental entity

4

that has been run by the federal government since 2008, interprets the HPA to require lenders to use "the value of the property *at the time of the modification*" when recalculating PMI termination dates.  Fannie Mae Servicing Guide Announcement SVC-2010-05 (Mar. 30, 2010) (emphasis added); *see* Mem. at 6-7, 15.  Nor does Plaintiff deny that, in light of Fannie Mae's outsized role in the mortgage industry, lenders and servicers "'are guided in their decisions by Fannie Mae … requirements.'"  *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 225 (2d Cir. 2012).  Accordingly, adopting Plaintiff's construction of the HPA would do violence to the expectations of the entire home finance industry.  Mem. at 18-19.

Instead of grappling with this troubling result, Plaintiff asserts that Fannie Mae's servicing rules are "irrelevant" because Fannie Mae "cannot restrict Plaintiff's PMI termination rights" under the statute.  Opp. at 12 (citing CFPB Bulletin 2015-03, at 5).  That argument is a red herring.  Chase does not contend that Fannie Mae's Servicing Guide trumps the terms of the HPA.  Rather, the fact that a quasi-governmental entity which plays a leading role in the industry has rejected Plaintiff's interpretation of the HPA provides a powerful indication that Plaintiff's interpretation is incorrect.  *See* Mem. at 15, 18-19.

Plaintiff likewise is mistaken in suggesting that HPA provisions addressing refinanced loans support her interpretation of the statute.  Plaintiff concedes that an updated property value must be used after a loan is refinanced, but argues that Congress inexplicably intended the opposite result for loan modifications.  Opp. at 10-11.  From an economic standpoint, however, the two transactions are virtually identical:  both can alter the borrower's principal, interest rate, and repayment period.  There is no apparent reason why Congress would have wished to require the use of updated property values at the time of a refinancing but not at the time of a loan modification.  Nor is there any indication in the legislative history that Congress intended to treat

modifications differently than refinances for purposes of PMI termination dates. Accordingly, the Court should reject Plaintiff's effort to draw "untenable distinctions" between modifying a loan and refinancing a loan. *Patterson*, 456 U.S. at 71 ("Statutes should be interpreted to avoid untenable distinctions…."); *Register v. PNC Fin. Servs. Grp., Inc.*, 477 F.3d 56, 69 (3d Cir. 2007) (rejecting argument that language differences in related statutory provisions required different standards to apply where it "would lead to a result that is not sensible").

Plaintiff also argues that it was improper for Chase to rely on a broker price opinion ("BPO") to obtain the updated property value it used in connection with her loan modification. Opp. at 3-4. Nothing in the HPA, however, prohibits reliance on BPOs. Furthermore, the Treasury Department explicitly instructs lenders that they "may use … a broker's price opinion (BPO)" in order to obtain an updated property value in conjunction with a HAMP loan modification. *See* Making Home Affordable Program, *Handbook for Servicers of Non-GSE Mortgages* 73 (Version 3.0) (Dec. 2, 2010). Plaintiff is in no position to complain about the use of a BPO in calculating her PMI termination date when the very same BPO enabled her to qualify for a government-subsidized loan modification. *See* Mem. at 8-9.

Plaintiff fares no better with her reliance on a CFPB bulletin stating that "'automatic termination of PMI is required even if the current value of the property has declined below the original value.'" Opp. at 2 (quoting CFPB Bulletin 2015-03 at 3 (Aug. 4, 2015)) (emphasis omitted). The CFPB bulletin merely emphasizes that, in an ordinary situation in which no loan modification or refinancing occurs, lenders are not entitled to recalculate PMI termination dates after those dates are fixed – not even if the property declines in value. But where, as here, the borrower modifies his or her loan, the HPA *mandates* a recalculation of the borrower's termination date using the terms and conditions of the modified loan. *See* 12 U.S.C. § 4902(d).

Nothing in the bulletin addresses the recalculation of PMI termination dates in the context of a loan modification; nor does anything therein suggest that updated property values should be ignored when performing such recalculations.

## II.     PLAINTIFF'S HPA CLAIM IS TIME-BARRED.

Plaintiff's HPA claim also is time-barred.  HPA claims must be brought within "2 years after the date of the discovery of the violation that is the subject of the action."  12 U.S.C. § 4907(b).  Here, Plaintiff alleges that Chase violated the HPA by calculating that the PMI termination date of her modified loan was November 1, 2026.  Compl. ¶¶ 71-72.  The complaint makes clear, moreover, that Chase communicated this calculation to Plaintiff in August 2012, when it sent her a letter stating that her "PMI is scheduled to automatically cancel on November 1, 2026."  *Id.* ¶ 52.  The complaint also makes clear that Plaintiff "discover[ed] the violation" in 2012:  it expressly alleges that she "questioned the misrepresentations" in Chase's letter by no later than October 2012.  *Id.* ¶ 53.  The statute of limitations therefore expired by October 2014.

Quoting an HPA notice provision codified at 12 U.S.C. § 4904(b)(1), Plaintiff counters that she did not discover "the 'grounds relied upon [by Chase]'" in recalculating her PMI termination date until October 2013, when she learned that the recalculation used an updated property value.  Opp. at 16.[1]  But neither Section 4904(b)(1) nor the date on which Plaintiff learned the details of the recalculation governs the accrual of her claim.  Rather, her claim

---

[1] The HPA requires lenders under certain circumstances to "provide written notice … of the grounds relied on to make the determination" that a borrower "did not meet the requirements for [PMI] termination."  12 U.S.C. § 4904(b)(1).  To the extent Plaintiff means to argue that Chase violated this provision of the HPA or that any claim with respect to this alleged violation would be timely, her argument fails because no such claim is asserted in the complaint.  *E.g.*, *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[T]he complaint may not be amended by the briefs in opposition to a motion to dismiss." (internal quotation marks omitted));  *Anderson v. DSM N.V.*, 589 F. Supp. 2d 528, 534 n.5 (D.N.J. 2008) (same).  Moreover, Plaintiff is simply wrong to assert that Chase violated Section 4904(b).

accrued on the "date of the *discovery* of the violation," *i.e.*, the date on which she learned that Chase had recalculated her PMI termination date in a way that allegedly violated the HPA.

Plaintiff likewise is wrong to assert that she may seek "recovery for subsequent wrongful acts which occurred within the statute of limitations," such as Chase's "failure to terminate Plaintiff's PMI in July 2014." Opp. at 17. As Plaintiff concedes, none of the cases she cites involved statutes of limitations that "begin to run upon … discovery as with HPA." *See id.*. Accordingly, Plaintiff's cases are wholly inapposite.

By contrast, cases applying the federal "discovery rule" are directly relevant. Where, as here, Congress uses the term "discovery" in a statute of limitations, the statute is deemed to incorporate the discovery rule. *See Merck & Co. v. Reynolds*, 559 U.S. 633, 646-48 (2010). Cases applying the discovery rule, moreover, make clear that Plaintiff's claims accrued when she discovered Chase's alleged miscalculation, *not* at any of the later dates on which she experienced effects of the purportedly erroneous calculation. *E.g.*, *Tinley v. Gannett Co.*, 55 F. App'x 74, 78-80 (3d Cir. 2003) (applying discovery rule in an ERISA case); *see Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 522 (3d Cir. 2007) (same).

The Third Circuit's application of the discovery rule in *Miller* is instructive. There, the plaintiff filed suit in 2003, alleging that the amount of his monthly disability payments had been miscalculated. *See* 475 F.3d at 518. The court dismissed the claim as time-barred, holding that the statute of limitations began to run in 1987 when the defendant "clearly repudiated" the plaintiff's claim for larger benefits. *See id.* at 522. The court also refused to hold that a new cause of action accrued each and every month in which the plaintiff's benefits were affected by the alleged miscalculation, holding that any such approach would be inconsistent with the policy of repose underlying statutes of limitations. *See id.*

The same reasoning applies here: Plaintiff's cause of action accrued at the latest in 2012, when Chase "clearly repudiated" any assertion that Plaintiff was entitled to a PMI termination date earlier than November 1, 2026. Nor may Plaintiff assert a timely claim based on the allegation that she continues to feel the effects of Chase's miscalculation in each month that she is charged for PMI. The Court should therefore dismiss Plaintiff's HPA claim as untimely.[2]

### III.     PLAINTIFF'S STATE-LAW CLAIMS SHOULD BE DISMISSED.

The HPA expressly preempts "the law of any State *relating to*" the termination of PMI. 12 U.S.C. § 4908(a)(1) (emphasis added). While Plaintiff acknowledges that the "plain wording" of this express preemption provision "contains the best evidence of Congress' preemptive intent" (Opp. at 18-19), she fails to address any of the extensive authority giving broad preemptive effect to indistinguishable language in other federal statutes. Mem. at 22; *see Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (finding that the words "relating to" in the preemption provision of the ADA "express a broad pre-emptive purpose"). The Court should therefore hold that each of Plaintiff's state-law claims is preempted. *See* Mem. at 21-24. Moreover, for the reasons explained in Chase's opening brief – none of which is successfully rebutted in the opposition – the state-law claims also should be dismissed for failure to state a claim. *Id.* at 24-28; *see* Opp. at 4 n.4 (withdrawing negligent misrepresentation claim).

### A.     Plaintiff's NJCFA Claim Is Preempted and Abandoned.

Plaintiff's opposition expressly renounces all of the grounds for the New Jersey Consumer Fraud Act ("NJCFA") claim that were articulated in her complaint. In particular, the

---

[2] Plaintiff's opposition also suggests in passing that she has asserted timely claims under the notice and cancellation provisions of the HPA codified at 12 U.S.C. §§ 4902(a), 4903, and 4904(a). Opp. at 17. The Court should not consider any such claim because it does not appear in the complaint. *See supra* note 1. Nor would any such claims have merit.

opposition disavows any NJCFA claim premised on Chase's alleged misrepresentations or its purported violations of the HPA.  Opp. at 22.  Accordingly, the Court should dismiss these grounds for Plaintiff's NJCFA claim as abandoned.  *See Johnson v. Novastar Mortg., Inc.*, 698 F. Supp. 2d 463, 464 n.1 (D.N.J. 2010) (dismissing claims abandoned in opposition brief).

The sole basis on which Plaintiff now attempts to defend her NJCFA claim is that Chase engaged in the allegedly "unconscionable" practice of using BPOs instead of "full appraisals" to establish updated property values.  Opp. at 22.  The Court should not consider this claim because it is not pleaded in the complaint.  *See supra* note 1 (collecting cases).[3]

Even if the Court were to consider this newly-asserted claim (and it should not), the claim would be preempted.  Plaintiff essentially seeks to add to the HPA's termination date provisions an additional requirement – found nowhere in the statute – that lenders must use a non-BPO appraisal to establish an updated property value.  Such a claim would be preempted even under the preemption cases cited by Plaintiff.  *Dwoskin v. Bank of Am., N.A.*, 850 F. Supp. 2d 557, 569 (D. Md. 2012) (noting that the HPA preempts state consumer protection claims that seek to impose additional "requirements on the … procedures for PMI cancellation"); *Scott v. GMAC Mortg., LLC*, 2010 WL 3340518, at *5 (W.D. Va. Aug. 25, 2010) (fraud claim not preempted because it did not seek to enforce "requirements greater … than those embodied in the HPA"); *Fellows v. CitiMortgage, Inc.*, 710 F. Supp. 2d 385, 402 (S.D.N.Y. 2010) (deceptive trade practices claims preempted by the HPA); *see* Opp. at 19-20 (citing *Dwoskin*, *Scott* and *Fellows*).

### B. Plaintiff's Contract and Warranty Claims Are Preempted.

As clarified by Plaintiff's opposition, the sole basis for her breach of contract, implied

---

[3] As explained above, moreover, Chase's use of a BPO to establish the updated property value was expressly authorized by applicable Treasury Department rules.  *See supra* p. 6.

covenant and TCCWNA warranty claims is that Chase violated a contractual provision stating that "Plaintiff must pay premiums required to maintain mortgage insurance 'until … termination is required by Applicable Law.'"  Opp. at 23-25, 27.  Each of these claims is preempted, and also fails for the reasons explained in Chase's opening brief.  Mem. at 24-26, 28.

Although Plaintiff cites *Fellows* for the proposition that the HPA does not preempt contract claims, her reliance on that decision is misplaced.  There, the plaintiff sought to enforce a purported contractual commitment separate and apart from anything required under the HPA, and for that reason the court held that the claim was not preempted.  *See Fellows*, 710 F. Supp. 2d at 403-04.  Here, by contrast, Plaintiff seeks merely to enforce a derivative contractual obligation to follow "Applicable Law."  Numerous decisions, including *Fellows* itself, recognize that such a claim is preempted.  *Id.* at 403 (recognizing that a contract claim would be preempted if "predicated on a[] violation of state-imposed obligations"); *see Barzelis v. Flagstar Bank, F.S.B.*, 784 F.3d 971, 974 (5th Cir. 2015) ("[B]orrowers may not disguise … statutory violations as breach-of-contract claims to avoid preemption by relying on clauses stating that the agreement is subject to applicable law.").[4]

### C. Plaintiff's Unjust Enrichment Claim Is Preempted.

The crux of the unjust enrichment claim is that Chase collected PMI premiums from Plaintiff that were unlawful under the HPA.  Plaintiff does not meaningfully dispute that this claim is preempted.  Nor could she do so:  the claim precisely duplicates her claim under the HPA for return of allegedly unlawful premiums collected by Chase since July 2014.  The claim

---

[4] The infirmity of Plaintiff's TCCWNA claim is especially clear.  That statute prohibits the inclusion of terms that violate "clearly established" law in certain consumer contracts.  *See* N.J.S.A. § 56:12-15.  Plaintiff does not even attempt to explain how a contractual requirement to follow "Applicable Law" could run afoul of this prohibition.  *See* Mem. at 28.

thus represents a textbook example of HPA preemption.  *See* Mem. at 23 (collecting cases dismissing unjust enrichment claims as preempted by the HPA).  The claim also fails on the merits for the reasons explained in Chase's opening brief.  *See id.* at 26-27.

## CONCLUSION

Because Plaintiff's claims contain fundamental defects that could not be cured by amendment, the Court should dismiss the complaint without leave to amend.  *See* Mem. at 30.

Dated: September 11, 2015               Respectfully submitted,

 /s/ Anthony Del Guercio
Anthony Del Guercio
PARKER IBRAHIM & BERG LLC
270 Davidson Avenue
Somerset, NJ 08873
(908) 725-9700

Robert D. Wick
Christian J. Pistilli
Kathryn Cahoy
COVINGTON & BURLING LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000

*Attorneys for Defendants*