UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GINNIE FRIED, on behalf of herself and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>JPMORGAN CHASE & CO., et al.,<br><br>*Defendants*. | Civil Action No. 15-2512<br><br>OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court by way of Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.'s (collectively, "Defendants" or "Chase") motion for partial summary judgment. ECF No. 49. Plaintiff Ginnie Fried ("Plaintiff"), on behalf of herself and all others similarly situated, opposes the motion. ECF No. 53. For the reasons set forth below, Defendants' motion is **DENIED in part** and **GRANTED in part**.

## I. BACKGROUND

The allegations that form the background of this case were discussed in depth in both this Court's prior decision and in the Third Circuit's opinion affirming that decision. See Fried v. Jpmorgan Chase & Co., 2016 WL 347314 (D.N.J. Jan. 28, 2016), leave to appeal granted (May 26, 2016), aff'd and remanded sub nom. Fried v. JP Morgan Chase & Co., 850 F.3d 590 (3d Cir. 2017). For purposes of this motion, it is undisputed that Chase is engaged in U.S. consumer and commercial business including home lending, that Chase is an "active bank" holding Federal Deposit Insurance Corporation ("FDIC") certificate number 628, and that Chase is included on a list of "depository institutions and affiliates . . . currently under [the Consumer Financial Protection

1

Bureau's ("CFPB")] jurisdiction and subject to CFPB supervision and examination." Def's. Statement of Material Facts at ¶¶ 1-3; Pl's. Resp. at ¶¶ 1-3.

## II. PROCEDURAL HISTORY

On April 8, 2015, Plaintiff filed a complaint alleging violations of the Homeowner's Protection Act ("HPA") as well as supplemental state law claims. ECF No. 1. Plaintiff brought her case as a putative class action. Id. On June 17, 2015, Defendants moved to dismiss the Complaint on the grounds that Plaintiff failed to state a claim under the HPA, that Plaintiff's HPA claim was barred by the statute's two-year limitations period, 12 U.S.C. § 4907(b), that Plaintiff failed to state a claim against JP Morgan Chase & Co. ("JPMC"), and that Plaintiff's state law claims were preempted by the HPA. ECF No. 10.

On January 28, 2016, by order of this Court, ECF No. 23, Defendants' Motion to Dismiss was granted in part and denied in part. This Court denied Defendants' request to dismiss Plaintiff's HPA claim but granted Defendants' request to dismiss the state law claims. Id. This Court did not expressly rule on Defendants' request to dismiss Plaintiff's claim against JPMC. On February 25, 2016, Defendants moved to certify this Court's order for interlocutory review. ECF No. 31. Plaintiff consented to Defendants' motion. ECF No. 40, 43.

On April 7, 2016, this Court granted Defendants' motion to certify its Order for interlocutory review. ECF No. 42. By Order of May 26, 2016, the Third Circuit granted Defendants' Petition for Leave to Appeal, ECF No. 44, and the Third Circuit held argument on January 18, 2017.

On March 9, 2017, the Third Circuit affirmed this Court's Order with respect to the HPA claim and remanded for further proceedings. Fried v. JP Morgan Chase & Co., 850 F.3d 590 (3d Cir. 2017).

### III. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). All facts and inferences must be construed in the light most favorable to the non-moving party. Peters v. Del. River Port Auth., 16 F.3d 1346, 1349 (3d Cir. 1994). The party seeking summary judgment always bears the initial burden of production. Celotex, 477 U.S. at 323. This means that the moving party must establish either that there is no genuine issue of material fact and that the moving party must prevail as a matter of law, or demonstrate that the non-moving party has not shown the requisite facts relating to an essential element of an issue for which it bears the burden. Id. at 322-23.

### IV. ANALYSIS

Defendants seek partial summary judgment on two issues: first, Defendants argue JMPC should be dismissed from the case because the Complaint does not allege any wrongdoing by JPMC and, second, Defendants claim the HPA caps potential total recovery in this action at $500,000. The Court will **GRANT** summary judgment on the first issue and **DENY** summary judgment on the second issue.

**A. Dismissal of JPMC**

Defendants argue, without opposition, that JPMC should be dismissed from the case because the Complaint does not allege any wrongdoing by JPMC. The Court agrees.

The Third Circuit's decision establishes that JPMC should be dismissed from this case. In its March 9, 2017 opinion in this case, the Third Circuit explained:

3

> The complaint names both Chase and its parent company, JPMorgan Chase & Co. ("JPMC"), as defendants. While the District Court did not address the issue in its opinion, parent companies are not merely by dint of ownership, liable for the acts of their subsidiaries. Pearson. v. Component Tech. Corp., 247 F.3d 471, 484 (3d Cir. 2001). At oral argument, Fried's counsel acknowledged that the complaint did not allege any wrongdoing by JMPC itself and that the claims against JMPC should be dismissed. See Transcript of Oral Argument held on Jan. 18, 2017, at 25:10-13.

Fried, 850 F.3d at 595 n.2.

In Bankers Trust Co. v. Bethlehem Steel Corp., the Third Circuit observed "[i]t is axiomatic that on remand for further proceedings after decision by an appellate court, the trial court must proceed in accordance with the mandate and law of the case as established on appeal." 761 F.2d 943, 950 (3d Cir. 1985) (citing Briggs v. Pennsylvania R. Co., 334 U.S. 304, 306 (1948)). Consequently, the Court will grant Defendants' undisputed motion and dismiss JPMC from the case.

### B.     Recovery Under the HPA

The issue presented is whether Defendants are "subject to" agency enforcement under the terms of the statute, even though no agency has brought an enforcement action, therefore limiting Plaintiff's recovery here to a statutory cap. To address the issue, an analysis of the statutory provisions are in order.

#### 1. The HPA's Text

Defendants rely on 12 U.S.C. § 4907(a)(2)(B)(i) to argue that total recovery for all damages is limited to a statutory award of $500,000 or one percent of the net worth of the liable party. 12 U.S.C. § 4907 provides, in relevant part:

> **(a) In general** Any servicer, mortgagee, or mortgage insurer that violates a provision of this chapter shall be liable to each mortgagor to whom the violation relates for—
>
> **(1)** in the case of an action by an individual, or a class action in which the liable party ***is not subject to section 4909*** of this title, any actual damages sustained

4

by the mortgagor as a result of the violation, including interest (at a rate determined by the court) on the amount of actual damages, accruing from the date on which the violation commences;

    **(2)** in the case of—

        **(A)** an action by an individual, such statutory damages as the court may allow, not to exceed $2,000; and

        **(B)** in the case of a class action—

        **(i)** in which the liable party *is subject to section 4909* of this title, such amount as the court may allow, except that the total recovery under this subparagraph in any class action or series of class actions arising out of the same violation by the same liable party shall not exceed the lesser of $500,000 or 1 percent of the net worth of the liable party, as determined by the court; and

        **(ii)** in which the liable party *is not subject to section 4909* of this title, such amount as the court may allow, not to exceed $1,000 as to each member of the class, except that the total recovery under this subparagraph in any class action or series of class actions arising out of the same violation by the same liable party shall not exceed the lesser of $500,000 or 1 percent of the gross revenues of the liable party, as determined by the court;

    **(3)** costs of the action; and

    **(4)** reasonable attorney's fees, as determined by the court

12 U.S.C. § 4907 (emphasis added).

According to Defendants, 12 U.S.C. § 4907(a)(2)(B)(i) governs this case because Plaintiff's claim involves a putative class action against a defendant "subject to 4909." As a result, Defendants assert that actual damages are not available and that "total recovery" in this action, inclusive of costs and fees, "shall not exceed the lesser of $500,000 or 1 percent of the net worth of the liable party." Defs'. Br. at 6, 12 U.S.C. § 4907(a)(2)(B)(i). Plaintiff responds that the case is governed by 12 U.S.C. § 4907(a)(1) and (a)(2)(B)(ii) because Defendants are "not subject to section 4909." Plaintiff thus contends that the class can recover actual damages under § 4907(a)(1), statutory damages under (a)(2)(B)(ii), and costs and fees under (a)(3) and (a)(4).

Although the language of § 4909 itself is not at issue, it provides useful context for analyzing the parties' arguments for the plain meaning of § 4907(a)(1). 12 U.S.C. § 4909, entitled "Enforcement," provides in relevant part:

> **(a) In general** Subject to subtitle B of the Consumer Financial Protection Act of 2010 [12 U.S.C. 5511 et seq.], compliance with the requirements imposed under this chapter shall be enforced under—
>
> **(1)** section 8 of the Federal Deposit Insurance Act [12 U.S.C. 1818], by the appropriate Federal banking agency (as defined in section 3(q) of that Act [12 U.S.C. 1813(q)]), with respect to—
>
> . . .
>
> **(B)** depository institutions described in clause (i), (ii), or (iii) of section 19(b)(1)(A) of the Federal Reserve Act [12 U.S.C. 461(b)(1)(A)] which are not insured depository institutions (as defined in section 3(c)(2) of the Federal Deposit Insurance Act [12 U.S.C. 1813(c)(2)]); and
>
> . . .
>
> **(4)** subtitle E of the Consumer Financial Protection Act of 2010 [12 U.S.C. 5561 et seq.], by the Bureau of Consumer Financial Protection, with respect to any person subject to this chapter.
>
> . . .
>
> **(c)** In carrying out its enforcement activities under this section, each agency referred to in subsection (a) shall—
>
> . . .
>
> **(3)** require the mortgagee or servicer, as applicable, to reimburse the mortgagor in an amount equal to the total unearned premiums paid by the mortgagor after the date on which the obligation to pay those premiums ceased under this chapter.

The primary issue before the Court turns on the interpretation of "subject to § 4909." As a secondary matter, the Court will consider whether the limit on statutory awards applies to costs and fees.

**2. The Meaning of "Subject to § 4909"**

Both parties argue the plain meaning of the statute, as well at the surrounding legislative history, supports their position. Defendants contend a party is "subject to section 4909" if that party is within the statutory jurisdiction of the relevant agencies enumerated in § 4909(a),

regardless of whether an enforcement proceeding has been commenced. Plaintiff contends a party is "subject to section 4909" if that party is "subject to *actual* enforcement proceedings under § 4909." Pl's. Br. at 18. The Court finds that the plain meaning of the statute supports Plaintiff's position.

"It is axiomatic that statutory interpretation begins with the language of the statute itself." V.I. v. Knight, 989 F.2d 619, 633 (3d Cir. 1993) (citing Pennsylvania Dep't of Pub. Welfare v. Davenport, 495 U.S. 552, 557-58 (1990)). "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme. . . . A court must therefore interpret the statute as a symmetrical and coherent regulatory scheme, . . . and fit, if possible, all parts into a harmonious whole. . . ." FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000)) (citations and quotations omitted). Additionally, courts should "adopt a construction which recognizes each element of the statute." Lee v. Ashcroft, 368 F.3d 218, 223 (3d Cir. 2004); Gonzales v. Kohn Law Firm, S.C., 2014 U.S. Dist. LEXIS 6750, *14 (E.D. Wis. Jan. 17, 2014) (Under this analysis, "[e]ach word should be looked at so as not to render any portion of the statute superfluous.") (quotation omitted). "[I]f the statutory language is unambiguous, the plain meaning of the words ordinarily is regarded as conclusive." In re TMI Metro. Edison Co., 67 F.3d 1119, 1123 (3d Cir. 1995).

Courts construe statutory language to avoid interpretations that would render any phrase or provision superfluous. TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant."); Lee, 368 F.3d at 223 ("We start with the principle that if at all possible, we should adopt a construction which recognizes each elements of the statute."); Acceptance Ins. Co. v. Sloan, 263 F.3d 278, 283

(3d Cir. 2001) ("It is an axiom of statutory construction that whenever possible each word in a statutory provision is to be given meaning and not to be treated as surplusage.").

Defendants define "subject to" as "under the authority of." The New Oxford American Dictionary 1685 (2d ed. 2005). Pursuant to this definition, Defendants argue Chase is under the authority of the agencies enumerated in § 4909, as it is undisputed that Chase falls under the jurisdiction of the CFPB. Defendants provide examples from the U.S. Code, court decisions, and agency interpretation to support their definition of "subject to."

Plaintiffs argue that Defendants' interpretation of "subject to" would create disharmony among the provisions of the statute and, more specifically, render the "catch-all" provision of §4909(a)(4) meaningless. The catch-all provision authorizes the CFPB to bring enforcement proceedings against "any person subject to this chapter." According to Defendants' interpretation, any liable party subject to the HPA is also subject to CFPB enforcement.[1] Thus, Defendants' interpretation would make § 4907(a)(1), which authorizes actual damages against a liable party that is not subject to § 4909, surplusage and meaningless because every liable party under the HPA is subject to § 4909 and no class could ever recover actual damages. Plaintiff contends, and the Court agrees, that the better reading of § 4907(a)(1) is that "the defendant is not liable for actual damages in a class action if it has been subject to *actual* enforcement proceedings under § 4909 and had to repay improperly collected premiums, not that it might *potentially* one day be subject to enforcement proceedings." Pl's Br. at 18 (emphasis in original).

---

[1] Defendants argue that there are "many exceptions" to the CFPB's jurisdiction, including an exemption for small banks. Def's. Br. at 14; see 12 U.S.C. § 5517. The Court is not persuaded that any of these exceptions apply to entities that could potentially face liability under the HPA and Defendants' Brief points to none. Additionally, there does not appear to be any exemption for small banks in the cited portion of the statute. See 12 U.S.C. § 5517(d)(1) (describing the general exclusion from CFPB jurisdiction for accountants and tax preparers).

8

Thus, Plaintiff argues a party is "subject to § 4909" once one of the statutorily enumerated federal agencies has commenced an actual enforcement proceeding against the liable party and required that party to reimburse the overcharged homeowners. Plaintiff bases this interpretation on reading § 4907 and § 4909 together. Under § 4907, homeowners pursuing a class action are entitled to an award of actual damages and an award of up to $500,000 in statutory damages except when the liable party is "subject to § 4909." 12 U.S.C. 4907(a)(2)(B)(ii). Section 4909, in turn, authorizes the appropriate federal agency to bring enforcement proceedings and to "require the mortgagee or servicer, as applicable, to reimburse the mortgagor in an amount equal to the unearned premiums paid by the mortgagor." 12 U.S.C. § 4909(c)(3). Where the party liable is "subject to" § 4909, homeowners pursuing a class action are not entitled to recover actual damages and can only seek up to $500,000 in statutory damages for the entire class. 12 U.S.C. § 4907(a)(2)(B)(i).

According to Plaintiff, reading § 4907 and § 4909 together "demonstrates Congress' intent that actual damages could only be recovered once, either in a governmental enforcement action or in a private civil action." Pl's. Br. at 9. When there is a governmental enforcement action, the appropriate agency "shall" require the liable party to reimburse the overcharged homeowner, thus obviating the need for actual damages to make the homeowner whole. 12 U.S.C. § 4909(c)(3). In the absence of a governmental enforcement action, the overcharged homeowner is entitled to actual damages to ensure recovery of the excess premium payments. "In either case, the overcharged homeowners would be made whole, *i.e.*, they would be repaid the PMI premiums they overpaid, and the lender would not be subject to double liability, *i.e.*, having to repay those premiums both in a class action lawsuit and in a governmental enforcement action." Pl's. Br. at 10.

Defendants respond that Plaintiff's interpretation fails to take into account the practical realities of the dual enforcement scheme established by the HPA. Defendants assert that Plaintiff's interpretation opens the door for duplicative damages: an agency could bring an enforcement proceeding requiring the liable party to reimburse overcharged homeowners after a class action has already resulted in payment of actual damages to those same overcharged homeowners. Defendants also contend that Plaintiff's interpretation would create conflicts between courts and agencies regarding whether a violation has taken place and which party is responsible for providing reimbursement.

These objections are unavailing. If an agency brings an enforcement action and provides reimbursement, the HPA clearly limits plaintiffs to capped statutory damages. Conversely, if a court awards actual damages to a class of private homeowners, a government agency would be precluded from seeking double recovery on behalf of those homeowners. See, e.g., EEOC v. U.S. Steel Corp., 921 F.2d 489, 495 (C.A.3 1990) (finding that individuals who litigated their own claims under the ADEA were precluded by res judicata from obtaining individual relief in a subsequent EEOC action based on the same claims); F.T.C. v. AMREP Corp., 705 F. Supp. 119, 124 (S.D.N.Y. 1988) (holding that, while a private individual cannot foreclose the Government's right to bring an independent action to vindicate the public interest, the FTC was precluded from bringing an action seeking compensation for individuals who had previously settled with defendant). As for Defendants' arguments regarding potential conflicts between agencies and courts, many consumer protection laws—including the Truth in Lending Act ("TILA"), 15 U.S.C. § 1607, the Electronic Fund Transfer Act, 15 U.S.C. § 1693, and the Fair Credit Reporting Act, 15 U.S.C. § 1681—provide for both agency enforcement and civil liability without creating separate purviews for each entity. Defendants' unsupported argument that overlapping civil and

administrative enforcement of the HPA would create conflicts does not square with the established enforcement schemes for a broad range of consumer protection statutes.

Adopting Defendants' position would make § 4907(a)(1)'s authorization of actual damages surplusage and meaningless, thereby creating disharmony among the HPA's various provisions. Plaintiff's interpretation, on the other hand, is consistent with the overall statutory scheme.[2]

### 3. Meaning of "total recovery under this subparagraph"

As a secondary matter, Defendants argue Plaintiffs may not recover more than $500,000 because the "HPA's text conclusively demonstrates, and very plainly states, that the 'total recovery' in 'any class action or series of class actions' is limited by the cap of Section 4907(a)(2)(B)(i)." Defs'. Br. at 9. Plaintiff responds that "the plain language states that such a limitation only pertains to the statutory damages set forth in 'this subchapter.'" Id. The Court agrees with Plaintiff.

---

[2] Because the Court finds that the plain meaning of the statute supports Plaintiff's interpretation, it need not consider legislative intent. In re TMI Metro. Edison Co., 67 F.3d 1119, 1123 (3d Cir. 1995). If the Court were to consider legislative intent, it would still agree with Plaintiff. Remedial statutes designed to redress abusive practice, such as the HPA, should be liberally construed in favor of the consumer. See e.g., Rossman v. Fleet Bank (R.I.) Nat'l Ass'n, 280 F.3d 384, 90 (3d Cir. 2002) (quoting Ramadan v. Chase Manhattan Corp., 156 F.3d 499, 502 (3d Cir. 1998) (As "the TILA is a remedial consumer protection statute, we have held it 'should be construed liberally in favor of the consumer.'"); see also Begala v. PNC Bank, Ohio, Nat'l Ass'n, 163 F.3d 948, 950 (6th Cir. 1998) ("We have repeatedly stated that TILA is a remedial statute and, therefore, should be given a broad, liberal construction in favor of the consumer."); Fairley v. Turan-Foley Imps., Inc., 65 F.3d 475, 482 (5th Cir. 1995) ("The TILA is to be enforced strictly against creditors and construed liberally in favor of consumers . . . ."). Defendants' narrow reading of the HPA would undermine the statute's remedial purpose by making it more difficult for consumers to receive restitution of overpayments. Additionally, Defendants' attempts to use the legislative record to support their position are unavailing. Defendants point to statements from the record referring to "compromise language" regarding class action lawsuits and note that the HPA does not include the unrestricted authorization for actual damages found in the TILA. Defs'. Br. at 7-8, 9-11. These elements of the legislative history are equally consistent with Plaintiff's interpretation, which only allows for actual damages when an agency has not brought an enforcement action. Consequently, the only clear evidence of Congressional intent is the remedial purpose of the HPA, which dictates a broad reading of the statutory language in favor of the Plaintiff-consumer.

As Plaintiff argues, the cap in § 4907(a)(2)(B)(i) and (a)(2)(B)(ii) explicitly relates to recovery under "this subparagraph." Subparagraph (a)(2), unlike (a)(1) (actual damages), (a)(3) (costs), and (a)(4) (fees), applies to "such statutory damages as the court may allow." 12 U.S.C. § 4907(a)(2). Consequently, only statutory damages under subparagraph (a)(2) are subject to the limit contained therein. Section 4907(a)(3) and (a)(4) allow for the recovery of costs and fees, without reference to either enforcement under § 4909 or any limit contained in (a)(2). Defendants' argument would "render the provisions of . . . 4907(a)(3) . . . and 4907(a)(4) a virtual nullity" if total recovery under the entire statute was limited by the cap in subparagraph (a)(2). Pl's Br. at 19. The limit on damages under the subparagraph is applicable to statutory damages and is inapplicable to actual damages, costs, or fees.

### III. Conclusion

Based on the foregoing, the Court **GRANTS** in part and **DENIES** in part Defendant's Motion for Partial Summary Judgment.

*/s Madeline Cox Arleo*

**Hon. Madeline Cox Arleo**
**United States District Judge**